NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 170946-U

NO. 4-17-0946

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee | ) | Circuit Court of |
| v. | ) | Macon County |
| AARON D. CURRIE, | ) | No. 98CF1594 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jeffrey Geisler, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held:*   The appellate court affirmed the trial court's dismissal of defendant's successive postconviction petition.

¶ 2   In August 1999, a jury convicted defendant, Aaron D. Currie, of first degree murder (720 ILCS 5/9-1(a)(1) (West 1996), and the trial court later sentenced him to 40 years in prison. He appealed that conviction, but this court affirmed. *People v. Currie*, No. 4-99-0878, slip order at 7 (2001) (unpublished order under Illinois Supreme Court Rule 23) (*Currie I*). In August 2000, defendant *pro se* filed a postconviction petition that the trial court advanced to second-stage proceedings and ultimately dismissed in March 2002.

¶ 3   In April 2010, defendant filed a motion for leave to file a successive postconviction petition, and in May 2010, the trial court granted that motion. That petition was supported by Mark Outlaw's affidavit that said his testimony at defendant's murder trial was false and he

knew defendant had not committed the crime about which Outlaw had testified.

¶ 4        In December 2013, the State filed a motion to bar Outlaw from testifying at a third-stage evidentiary hearing. That motion was based upon the claim that Outlaw refused to speak with either the State's investigators or defendant's lawyer regarding Outlaw's affidavit.

¶ 5        Later in December 2013, the trial court conducted a hearing on the State's motion at which the State called Outlaw to testify regarding the matter alleged in his affidavit. After Outlaw testified in response to the State's questions, the State conceded the motion to bar his testimony was then moot, and the court denied the motion.

¶ 6        In September 2017, defendant filed an amended successive postconviction petition, and the State filed a motion to dismiss the petition. In December 2017, the trial court conducted a hearing on that motion, granted it, and dismissed the petition.

¶ 7        Defendant appeals, arguing only that the State and the trial court violated the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2008)) because the court allowed the State to elicit testimony of an affiant prior to a third-stage evidentiary hearing. We disagree and affirm.

¶ 8                    I. BACKGROUND

¶ 9                    A. Defendant's Jury Trial

¶ 10       Because the evidence presented at the defendant's jury trial is not at issue in this appeal, we will only briefly summarize it. Outlaw testified as a State's witness against defendant, and this court wrote the following when it rejected defendant's initial appeal:

> "A significant part of the State's case was defendant's confession. ***
>
>                    * * *
>
> *** At the jury trial, defendant testified extensively about his relationship to and

dealings with the police, including receiving favorable treatment for cooperation; indicated he made several discrepant statements to the police; acknowledged that *** he made an inculpatory statement about the homicide that contradicted his earlier statements; denied involvement in the killing or attempted robbery of the victim; and said he was lying when he told police that he knew who shot the victim." *Currie I*, slip order at 2-4.

¶ 11                        B. Defendant's Initial Postconviction Proceedings

¶ 12        In August 2000, defendant *pro se* filed a postconviction petition that the trial court dismissed in March 2002. Defendant did not appeal that dismissal.

¶ 13                        C. Defendant's Successive Postconviction Petition

¶ 14        In April 2010, defendant filed a motion for leave to file a successive postconviction petition—the petition at issue in this appeal—that the trial court granted in May 2010. That petition was supported by Outlaw's affidavit attesting that his trial testimony was false and that Outlaw knew defendant had not committed the crime of which he was convicted.

¶ 15                        1. *The State's Motion to Bar Outlaw's Testimony*

¶ 16        In December 2013, the State filed a motion to bar Outlaw's testimony "in connection with postconviction matters in this case" on the ground that since the filing of defendant's postconviction petition, Outlaw had refused to speak with anyone concerning the contents of the affidavit he had sent to defendant's mother, in which he wrote that his testimony at defendant's trial "was all false. I know you didn't commit such crimes."

¶ 17        The State's motion to bar Outlaw's testimony concluded with the following assertion:

"That the letter and its contents, if true, provide significant information

- 3 -

that counsel for both sides in this cause need to be aware of. However, if Mark Outlaw refuses to discuss the letter, or even to acknowledge authorship, there is no proper way to lay the foundation for the letter or for the allegations it contains."

The State's motion contained no explanation regarding why any of the concerns expressed in the State's motion were appropriate for the trial court to resolve or even consider at the second stage of postconviction proceedings. (For whatever reason, the State in its motion referred to Outlaw's affidavit as a letter.)

¶ 18                                      2. *The Hearing on the State's Motion*

¶ 19          In December 2013, Judge Timothy J. Steadman conducted a hearing on the State's motion to bar Outlaw's testimony, at which the State called Outlaw as a witness. He answered all of the prosecutor's questions and (1) essentially tried to explain why he testified as he did at trial and (2) reaffirmed that what he wrote in his affidavit about his trial testimony being all false was true.

¶ 20          Following Outlaw's testimony, the trial court asked the prosecutor if, given that Outlaw had now testified, she was still requesting that his prospective testimony be barred if defendant "files a successive postconviction petition and calls Mr. Outlaw to testify?" After the prosecutor responded that she was no longer making that request, the court denied the motion as moot. The court also pointed out to defendant's counsel that the successive postconviction petition had not yet been filed and inquired when it would be. Counsel responded that he would need some additional time to do so.

¶ 21          3. *The Successive Postconviction Petition and the State's Motion To Dismiss*

¶ 22          For the next few years, the filing of the successive postconviction petition that the

trial court had permitted was delayed both because of changes in defendant's representation and because of disagreements between defendant and his lawyers over what the new petition should contain. Ultimately, defendant, through counsel, filed an amended successive petition for post-conviction relief in September 2017.

¶ 23 In November 2017, the State filed a lengthy and detailed motion to dismiss that petition, asserting that nothing in the petition met the legal requirements for a new trial.

¶ 24 4. *The Hearing on the State's Motion To Dismiss*

¶ 25 In December 2017, Judge Jeffrey S. Geisler conducted a hearing on the State's motion to dismiss at which the defendant, his lawyer, and the prosecutor were all present. Outlaw was also present pursuant to a writ of *habeas corpus* for him that defense counsel had prepared. At that hearing, the prosecutor spoke in support of the State's motion to dismiss and argued, in part, that (1) newly discovered evidence must be of such a convincing character that it would likely change the outcome of the trial and (2) Outlaw's recantation did not meet that standard. The prosecutor noted that although Outlaw testified as a State's witness, "[h]e was not the primary source of evidence used to convict this defendant. I would argue the defendant was the primary source of evidence used to convict him."

¶ 26 Defense counsel began her remarks to the trial court at that hearing as follows: "We are here solely on the motion to dismiss. This is not an evidentiary hearing at this stage." She later added the following:

> "[Outlaw's] recantation has been set forth in two documents, Judge. That should be enough at least to get us to an evidentiary hearing. *** That is really all we are asking for, is an evidentiary hearing to make that determination.
>
> I brought Mr. Outlaw today in case the court wanted me to affirm that

these documents that are attached to the successive petition were indeed signed by him, whether that letter was indeed prepared by him and sent to petitioner's mother."

¶ 27    In response to defense counsel's remarks, Judge Geisler first stated the following:

"I do not wish to hear from Mr. Outlaw. First of all, at a second stage hearing, I have to take what is stated in the petition as true unless it is refuted by the record. *So the issue at the second stage, of course, is we're testing the legal sufficiency of the petition.* So I see no reason to listen to Mr. Outlaw at this stage." (Emphasis added.)

¶ 28    In Judge Geisler's later remarks, he reiterated this theme, as follows: "We are here, first of all, to make the determination on the sufficiency of petitioner's allegations to demonstrate a constitutional infirmity that would necessitate relief under the postconviction hearing [Act]."

¶ 29    Judge Geisler concluded the proceeding with the following ruling:

"As I reviewed the record, I certainly think that there is sufficient evidence to have convicted the defendant even with the recanted testimony in this case. So given what the court has seen from the amended successive petition, the motion to dismiss the amended successive petition for postconviction relief [is granted]."

¶ 30    This appeal followed.

¶ 31    II. ANALYSIS

¶ 32    On appeal, defendant argues only that the State and the trial court violated the Act because the court allowed the State to elicit testimony of an affiant prior to a third-stage evidentiary hearing. For the reasons that follow, we disagree.

¶ 33                    A. Second-Stage Postconviction Proceedings

¶ 34          In *People v. Edwards*, 197 Ill. 2d 239, 245-46, 757 N.E.2d 442, 446 (2001), the

Illinois Supreme Court explained the procedures governing the second stage of postconviction

proceedings, as follows:

> "If the circuit court does not dismiss the postconviction petition as frivolous or
>
> patently without merit, then the petition advances to the second stage.  Counsel is
>
> appointed to represent the defendant, if necessary [citation], and the State is al-
>
> lowed to file responsive pleadings [citation].  At this stage, the circuit court must
>
> determine whether the petition and any accompanying documentation make a sub-
>
> stantial showing of a constitutional violation.  See *People v. Coleman*, 183 Ill. 2d
>
> 366, 381, 701 N.E.2d 1063 (1998).  If no such showing is made, the petition is
>
> dismissed.  If, however, a substantial showing of a constitutional violation is set
>
> forth, then the petition is advanced to the third stage, where the circuit court con-
>
> ducts an evidentiary hearing [citation]."

¶ 35          In *People v. Coleman*, 183 Ill. 2d 366, 380-81, 701 N.E.2d 1063, 1071 (1998), the

supreme court wrote that at the second stage of a postconviction proceeding, the trial court

> "is concerned merely with determining whether the petition's allegations suffi-
>
> ciently demonstrate a constitutional infirmity which would necessitate relief un-
>
> der the Act.  Moreover, our past holdings have foreclosed the circuit court from
>
> engaging in any fact-finding at a dismissal hearing because all well-pleaded facts
>
> are to be taken as true at this point in the proceeding."

Based upon this authority, defendant argues that a trial court is prohibited from

making findings of fact or credibility determinations at the second stage.  Defendant then asserts

that "there is no question that the State violated the Act where it elicited testimony from Mark Outlaw during second-stage proceedings, attacking the veracity of his affidavit." Defendant further argues that "if the State wished to challenge the foundation of Mark Outlaw's affidavit, it should have done so at a third-stage evidentiary hearing, not at second-stage proceedings."

¶ 36 Last, defendant contends that when the trial court and the parties "circumvent the procedures required under the Act, the cause should be remanded—irrespective of any showing of prejudice."

¶ 37                                B. This Case

¶ 38 Defendant is correct that the procedures followed in this case were peculiar and irregular. For instance, we know of no authority permitting the State to challenge an affidavit that a defendant has submitted in support of his postconviction petition on the ground that the affidavit's author was not willing to discuss the affidavit with anyone. Given that the trial court at the second stage is supposed to only evaluate the sufficiency of the documents a defendant has submitted in support of his petition—including, as here, an affidavit of recantation—the State's motion to bar Outlaw's testimony was inappropriate at a second-stage proceeding, and the trial court should have denied it for that reason alone.

¶ 39 Had the State filed a motion to dismiss the petition that the trial court denied, which then moved the proceedings to the third stage, then the State could have challenged Outlaw's testimony at that point. But doing so earlier was simply premature and inappropriate.

¶ 40 However, the record is absolutely clear in this case that defendant suffered no prejudice at all from this strange irregularity. We so conclude based upon the following: (1) the hearing at which Outlaw testified was conducted in December 2013 by Judge Timothy Steadman; (2) the hearing on defendant's successive postconviction petition, which ultimately resulted

in its dismissal, was conducted in December 2017 by Judge Jeffrey S. Geisler; (3) Judge Geisler's remarks at that hearing show that he fully understood that his decision was to be based solely upon the sufficiency of the documentation presented to him at that second-stage proceeding; (4) no one at that hearing made any reference whatsoever to Outlaw's testimony four years earlier at the hearing conducted by Judge Steadman, much less (as defendant contends on appeal) made reference to it in an attack on the affidavit's veracity; and (5) the record contains no indication that Judge Geisler was even aware of Outlaw's testimony from four years earlier.

¶ 41        Because (1) the procedural irregularities in this case constitute the sole basis of defendant's appeal and (2) defendant suffered no prejudice at all from these irregularities, we affirm the trial court's judgment dismissing defendant's successive postconviction petition.

¶ 42                                III. CONCLUSION

¶ 43        For the reasons stated, we affirm the trial court's judgment.

¶ 44        Affirmed.